UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

JAMES MAXIE                                                                    PLAINTIFF

v.                                                    CIVIL ACTION NO. 5:23-CV-24-JHM

BRIAN LAIRD et al.                                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are the cross-motions for summary judgment filed by Defendants Noah Willett, Brandon Cupp f/k/a Jones[1], and Jaime Euteneier (DN 71) and Plaintiff James Maxie (DN 83). For the following reasons, the Court will grant Defendants' motion and deny Plaintiff's cross-motion.

On initial review under 28 U.S.C. § 1915A, the Court allowed to go forward Plaintiff's individual-capacity 42 U.S.C. § 1983 claims for false arrest, false imprisonment, and excessive force against Defendant Willett; his individual-capacity § 1983 and Kentucky state-law malicious-prosecution claims against Defendants Cupp, Willett, and Euteneier; his state-law claims for malicious prosecution against Defendants Cupp, Willett, and Euteneier; his state-law claims for false arrest and assault and battery against Defendant Willett; his state-law intentional infliction of emotional distress (IIED) claim against Defendant Cupp; and his state-law libel claim against Defendant Euteneier. DN 8, PageID #: 39-40.

## I. DEFENDANTS' STATEMENT OF FACTS

According to Defendants' summary-judgment motion, during 2021-2022, Defendants, all of whom are or were at the time Paducah Police Department (PPD) officers, encountered Plaintiff during the normal course of their work in the following incidents.

---

[1] Herein, the Court will refer to this Defendant as "Cupp," even where the record refers to him as "Jones."

### *1. March 29, 2021, Walmart Incident*

On March 29, 2021, Jacqueline Patterson called the PPD to report a male exposing himself to her in Walmart.  DN 71, PageID #: 479.  She identified the man who exposed himself on Walmart's security video footage.  *Id.*  Ms. Patterson's husband, a parole officer, also recognized a photo taken from the footage as Plaintiff, who was a parolee at that time.  *Id.*  Mr. Patterson also showed Ms. Patterson a photo of Plaintiff in his possession due to his position as a parole officer, and she again positively identified him as the perpetrator.  *Id.* (citing Patterson Affidavit, DN 71-1).  Mr. Patterson called Plaintiff to his office later that day, at which point Defendant Cupp interviewed him; Plaintiff admitted to being at Walmart at the time of the incident and to putting his hands down the front of his jogging pants while there.  *Id.* (citing body cam video of interview, DN 71-2).  Defendant Cupp issued a citation to Plaintiff for Indecent Exposure, Second Degree and Disorderly Conduct, Second Degree, which summoned him to appear in Court.[2]  *Id.* (citing Cupp Affidavit with Citation and KYIBRS Report, DN 71-3).[3]

Before this case was taken to trial, Plaintiff was convicted of one count of Indecent Exposure, Second Degree and one count of Voyeurism for the "Yeiser Avenue Incident" (*see* below) and sentenced to 270 days in jail.  *Id.*  Additionally, his parole was revoked, and he was ordered to serve several years in prison.  *Id.* (citing Maxie depo., DN 81, PageID #: 692).  For this reason, the prosecutor, Craig Newbern, agreed to dismiss this case without prejudice.  *Id*. (citing Newbern Affidavit, DN 71-5).

---

[2] Defendant Cupp's citation records that Plaintiff "caused significant public alarm, fondling and exposing himself in a busy store."  DN 71-3, PageID #: 506.

[3] KYIBRS stands for Kentucky Incident Based Reporting System.  *See Coursey v. Commonwealth*, 593 S.W.3d 64, 65-66 (Ky. App. 2019).

### *2. April 2, 2021, Gailee Brown Incidents*

On April 2, 2021, Gailee Brown contacted the PPD concerning two incidents. *Id.* at PageID #: 480. Defendant Euteneier responded and interviewed her. *Id.* Ms. Brown reported that on March 31, 2021, she was approached by Plaintiff while sitting on her front porch. *Id.* She stated that Plaintiff offered her $100 to let him have intercourse with her. *Id.* When she refused, he then offered her $20 to watch him masturbate, which she also refused. *Id.* She further stated that on "approximately March 20, 2021," Plaintiff approached her at the EZ Shop on Bridge Street and exposed his genitals to her. *Id.* Ms. Brown told Defendant Euteneier that she was able to identify Plaintiff by looking up his picture on an online offender registry. *Id.* at PageID #: 481 (citing Euteneier Affidavit with Citation and KYIBRS Report, DN 71-7). The citation stated that Ms. Brown told Defendant Euteneier that she looked the man up on "the Sex Offender Registry;" however, Defendants point out that a fair review of the body camera footage of Ms. Brown's interview actually shows that she indicated it was an online "offender registry," which Defendant Euteneier mistakenly assumed was the sex offender registry and indicated it as such in his citation. *Id.* (citing DNs 71-7, 71-8). Defendants assert that the Kentucky Online Offender Lookup (KOOL) registry is likely what Ms. Brown actually used in identifying Plaintiff and explain that Plaintiff's photo was on KOOL at that time because he had just been released from prison. *Id.* (citing Maxie depo., DN 80, PageID #: 592).

Ms. Brown also told Defendant Euteneier that the perpetrator drove a white Buick Rendezvous and had just gotten out of prison after serving a 20-year sentence. *Id.* (citing body cam video, DN 71-8). Defendant Euteneier investigated and learned that Plaintiff drove a white Buick Rendezvous and had just served 20 years in prison. *Id.* (citing Maxie depo., DN 80, PageID #: 593). He also spoke to Defendant Cupp who informed him that he had just summoned Plaintiff,

on March 29, 2021, for similar conduct in Walmart and had discovered during his investigation that Plaintiff had received over 150 write-ups in prison for indecent exposure. *Id.* (citing DN 71-7).

Thereafter, on April 6, 2021, Defendant Euteneier observed Plaintiff walking down South 6th Street and served him with a citation for Disorderly Conduct, Second Degree, and Indecent Exposure, Second Degree. *Id.* (citing Citation, DN 71-7). Again, Plaintiff was not arrested but rather summoned to court. *Id.* The charges were later dismissed without prejudice. *Id.* (citing Order, 21-M-00492, DN 71-9; Newbern Affidavit, DN 71-5).

### 3. June 27, 2021, Yeiser Avenue Incident

On June 28, 2021, Ginger Hogancamp contacted the PPD to report that a black male had been on the front porch of her house on Yeiser Avenue the previous evening looking through her window while masturbating. *Id.* at PageID #: 481-82. The citation for Indecent Exposure, Second Degree and Voyeurism states that Ms. Hogancamp was in and out of her bathroom while working on her house during this time and that Plaintiff was on her porch such that he would be visible once she looked through the window. DN 71-3, PageID #: 511. Ms. Hogancamp had video of the incident from her front porch; upon viewing it, Defendant Cupp immediately identified the individual as Plaintiff. DN 71, PageID #: 481 (citing Cupp Affidavit with Citation and KYIBRS Report, DN 71-3).

Defendant Cupp learned on follow-up investigation that Ms. Hogancamp's son had also been in the room where the window was located and issued an additional citation charging Plaintiff with two counts of Indecent Exposure, Second Degree, and one count of Voyeurism.[4] *Id*. at PageID #: 482 (citing additional citation), DN 71-3, PageID #: 512. Plaintiff was located on June

---

[4] Because Ms. Hogancamp's son did not testify at the trial, Plaintiff was found not guilty of the charge related to him.

30, 2021, following another incident of indecent exposure, at which point he was interviewed and booked into jail. *Id*. (citing KYIBRS Report, DN 71-3; body cam video, DN 71-5).

Following a jury trial, Plaintiff was found guilty of one count of Indecent Exposure and one count of Voyeurism and sentenced to 270 days in jail. *Id.* (citing Order, DN 71-11).

### 4. June 30, 2021, ViWin Tech Incident

On June 30, 2021, ViWin Tech employee, Jessica Perez, called the police to report that a man approached her in the parking lot, pulled out his genitals, and masturbated in front of her. *Id*. Paducah Police Officers responded and, based on the description and the activities described, suspected that the perpetrator was Plaintiff. *Id.* Ms. Perez positively identified Plaintiff from a photo. *Id.* (citing DN 71-3; Perez Affidavit, DN 71-12). Defendant Cupp then located Plaintiff six blocks away, at which point he interviewed him about both the ViWin Tech Incident and the Yeiser Avenue Incident. *Id.* at PageID #: 483.

Concerning the ViWin Tech Incident, the Defendants point to the following colloquy in the body camera footage:

[Cupp]: She said that you pulled out your genitals and showed them to her. And touched yourself and then walked off.

Maxie: I'm saying, I mean I don't. . .

[Cupp]: I mean we both know you've got an issue with that behavior.

Maxie: I don't want to be accused because the first guy or the first African American or something. . .

[Cupp]: James . . .

Maxie: I'm not the only one in Paducah that do behaviors like that.

[Cupp]: I've cited you twice for it in the past 3 months. . . .

*Id*. at PageID #: 483 (citing DN 71-10, 2:30).

With respect to the Yeiser Street Incident, the Defendants point to the following exchange:

[Cupp]: I took another case on you from a lady on Yeiser Street.  Hear me out – the other night on Yeiser street you were on her front porch watching her. There's security camera footage of you – I recognized you immediately because I know you. You were sitting on her front porch masturbating on her front porch. That's some deviant behavior man. And you called last month and told me you're dealing with some things and you got used to that behavior in prison.

Maxie: Exactly. But I ain't – But Yeiser street, where is that at?

[Cupp]: That's literally, like two blocks down.  We're so close to Yeiser.

Maxie: Two blocks down this way?

[Cupp]: It's right over there. That's the reason I'm coming to you man, is like – we both know – you've told me that you got used to doing certain things in prison that you know that people don't like.

Maxie: But not all the time though.

[Cupp]: Okay.

Maxie: But not all the time.  Not all the time.  I'm not the only one in 100,000 plus . . .

[Cupp]: I'm not saying you are James, but like –

Maxie: I'm saying I'm dealing with this shit –

[Cupp]: We got to figure out a way for this to stop occurring.

Maxie: Yeah – . . .

*Id.* (citing DN 71-10, 4:25).

[Cupp]: Well, man I've got you on camera over there.  It is what it is.  You don't remember a night when you were on a lady's front porch?  She was doing some work in her house –

Maxie: Aw, yeah. Yeah. Yeah. Naw, Naw, I thought – I said – Damn is your name Sarah? She said her name was Sarah. So when I left, she came outside sitting on the porch – I said look, it's me – I said I don't mean to offend you.

[Cupp]: Yeah, she told me all of that.  She told me all of that, but before when you thought it was Ms. Sarah you were watching her –

6

> Maxie: Naw, I was just standing out there – I was just standing out there at first, because I was like – is this the fucking street? Because I met a little white chick earlier. And she said that she lived around this way, so I'm like – So I have – so when I seen her – I'm just standing there, because she had the light on. When she had the light on, she did something. So right when I was getting ready to walk up there, um – to the kitchen the bathroom, somewhere. So, I walked up on the porch and she came back in – so as far as masturbating and jacking and s[***], nah[.]

*Id*. at PageID #: 483-84 (citing DN 71-10, 6:50).

> [Cupp]: Because when you called me, the last time we talked on the phone – I mean that – If I can vouch for you in and get you in somewhere if you think want to go somewhere that can -uh - a program that can help you deal with like whatever tic – I mean, is it a nervous tic or is it like a – can you tell me a little bit about that behavior? What's the deal with it? Because you said you got used to prison behavior and people – you said it obviously shocks people out here. But, what is it about it that's hard for you, you know?

> Maxie: Because you know when you deal with a type of behavior with 20 plus years, I mean – you know what I mean? So, I – I – I don't know. Sometimes it's like – I don't know.

> [Cupp]: You just have like – is it sexual when you're doing it?

> Maxie: It's like an impulse.

*Id.* at PageID #: 484 (citing DN 71-10, 11:38).

Plaintiff was arrested and charged with one count of Indecent Exposure, Second Degree and then released on bond. *Id.* (citing Citation, DN 71-3). The charge was later dismissed without prejudice. *Id.* (citing Order #21-M-00801, DN 71-14; Newbern Affidavit, DN 71-5).

### 5. March 11, 2022, Walgreen's Incident

On March 11, 2022, Chloe Morgan, a Walgreen's employee, contacted the PPD about a black male who had exposed his genitals to her. *Id*. at PageID #: 484-85. Defendant Willett responded. *Id*. at PageID #: 485. Ms. Morgan showed him a photo of the individual taken from Walgreen's security camera footage, and Defendant Willett immediately recognized the person as

Plaintiff. *Id*. (citing Willett Affidavit, Citation, and KYIBRS Report, DN 71-15). Ms. Morgan explained that Plaintiff, who was out of jail at this time, had been in the store on numerous occasions over the preceding few months and would follow her around the store. *Id*.

Defendant Willett and another officer went to the address listed on Plaintiff's operator's license to arrest him for Violation of Conditions of Release, Stalking, Second Degree, Indecent Exposure, Second Degree, and Disorderly Conduct, Second Degree; during that time the officers' body cameras were recording. *Id*. Defendants point to the body camera footage as evidence that, other than moving Plaintiff's arms behind his back and putting handcuffs on him, no other force was used in effectuating the arrest. *Id*. (citing body cam videos, DNs 71-16, 71-17). Defendants also point to Plaintiff's admission in the footage and in his deposition in which he admitted to being at Walgreen's earlier that evening. *Id*. (citing Maxie depo., DN 81, PageID #: 693-94). They further point out that in his deposition he admitted that the only force used against him was when Officer Willett "grabbed you – your arms and put them behind your back, right?" "Yeah," *see id*. (citing Maxie depo., DN 81, PageID #: 696), and that he did not sustain any injuries. *Id*. (citing Maxie depo., DN 81, PageID #: 697).

Ultimately, Ms. Morgan refused to testify against Plaintiff out of fear. *Id*. (citing Morgan Affidavit, DN 71-18). After a bench trial in which the only evidence that could be presented was the security footage which did not show the front of Plaintiff during the alleged offense, the Court found him not guilty of indecent exposure and stalking but found him guilty of disorderly conduct and violating his bond conditions. *Id*. at PageID #: 485-86 (citing Maxie depo., DN 81, PageID #: 692; #22-M-342 Order, DN 71-19).

## II. PLAINTIFF'S STATEMENT OF FACTS

Plaintiff responded to Defendants' motion for summary judgment with a combined

response and cross-motion for summary judgment (DNs 82 and 83).[5]  Plaintiff attaches 10 documents: eight consist of copies of state court expungement orders of certain cases brought against him; the final two pages are employment records.  DN 83-1.

In his response/cross-summary-judgment motion, Plaintiff attempts to paint each incident and investigation in a different light.[6]  As set forth below, he offers no evidence to support his alternative theories and hypotheses about the incidents and investigations.

### 1. March 29, 2021, Walmart Incident

Plaintiff argues that it is unreasonable to believe that there was no video or eyewitness of the incident with Ms. Patterson because "Walmart has 100's of cameras in its stores, with workers and undercovers walking around the store . . . yet no one saw this incident."  DN 83, PageID #: 754.  He argues that no photo of him could have been shown to Ms. Patterson because there was no photo.  *Id.* at PageID #: 755.  Instead, he argues, "It is more likely that Ms. Patterson entered into collusion with her husband . . . to put Maxie into prison."  *Id.*

Plaintiff offers no evidence to support his assertions, whereas Defendants have provided Ms. Patterson's affidavit.  In her affidavit, Ms. Patterson averred the following: that, while shopping, she "saw a tall man with a slender build masturbating" with his genitals "fully exposed;" she described the incident to a police officer; Walmart sent her husband "a photo of the man's image that was captured" on Walmart's cameras; and her husband helped identify the person as Plaintiff.  DN 71-1, PageID #: 503.  The Court's review of the video clearly shows that the Walmart

---

[5] For docketing purposes, Plaintiff's response is denoted in the docket as DN 82, and Plaintiff's cross-motion appears in the docket as DN 83.  For ease of reading, the Court cites to the cross-motion only.

[6] In response (DN 86) to Plaintiff's cross-motion for summary judgment, Defendants adopt their arguments in their summary-judgment motion (DN 71) and reply to his response (DN 84).

employee was able to capture a photo from the security camera footage of Plaintiff walking out of Walmart.  DN 84-1, 22:00.

Plaintiff also contends that Ms. Patterson's identification of him is suspect because she initially described the person as Caucasian.  DN 71, PageID #: 755.  Neither her affidavit nor the citation and KYIBRS report state that, at first, Ms. Patterson identified the perpetrator as Caucasian.  DN 71-3, PageID #: 506-10.  The body camera footage Defendants attach to their reply, however, demonstrates that Defendant Cupp was initially told by another officer when he arrived at Walmart that the perpetrator was Caucasian, but the other officer then obtained additional information that the perpetrator was a black man.  DN 84-1, 4:48-51; 6:21-23.  Moreover, the Court notes that just a few pages later in his cross-motion, Plaintiff challenges the report of another victim that a "black man" masturbated in front of her because, he asserts, that, he, "while being an African-American . . . is not a black man, he is very light skinned, and the difference is qualitative."  DN 71, PageID #: 759.  This statement from Plaintiff about the import of his light skin undercuts his argument about having been first identified as a Caucasian.

Defendants also provided the body camera video of Defendant Cupp who, along with Ms. Patterson, reviewed Walmart security video where Plaintiff could be seen, and a photo of the man was printed out.  DN 84-1, 14:38-15:00; 27:04.  Shortly thereafter, Ms. Patterson states while on her phone with her husband, "I might have a name.  James Maxie."  *Id*. at 27:48-51.  She states that her husband with whom she was in contact with and shared the photo with by phone had provided the name.  *Id*. at 27:50-28:03.  Additionally, body camera video of Defendant Cupp speaking with Plaintiff at the parole and probation office later that day, which the Court has reviewed, supports Defendants' statement of facts.  DN 71-2.  Thus, Defendants have provided

evidence supporting their version of events and directly contradicting Plaintiff's unsupported assertions.

### 2. April 2, 2021, Gailee Brown Incidents

As to these incidents, Plaintiff questions why Ms. Brown did not immediately report the crime if not because of "fabrication and collusion" but offers no evidence to support this hypothesis. DN 83, PageID #: 756. He takes issue with Defendant Euteneier's affidavit that "now declares, and under perjury that 'he' thought Ms. Brown meant she had her friend look Maxie up on the sex offender registry when in fact she really meant 'offender registry,'" which, according to Plaintiff, must be a "fabrication." *Id.* at PageID #: 757 (cleaned up).

In contrast, Defendants have supplied Defendant Euteneier's affidavit averring that the citation issued to Plaintiff on April 6, 2021, was true and accurate except the statement that Ms. Brown identified Plaintiff from the sex offender registry. Under oath, he explains that, at the time, he mistakenly assumed her reference to an "offender registry" to be the sex offender registry rather than the KOOL registry and recorded it this way in his KYIBRS report. DN 71-7, PageID #: 525. Defendant Euteneier further avers that his "assumption was not due to any malice against [Plaintiff] but was a true misunderstanding on my part." *Id.* Again, Plaintiff offers no evidence to support his assertion that Defendant Euteneier's characterization of the registry was "fabricated and collusion" and not simply a mistake.

### 3. June 27, 2021, Yeiser Avenue Incident

Plaintiff argues that in the footage of this incident Defendant Cupp and Ms. Hogancamp discussed "whether she should state that her son was present." DN 83, PageID #: 758. He also argues that because her porch light was off, it was impossible for her to see anyone on her porch "with his penis in his hand," but again offers no evidentiary support. *Id.* Plaintiff contends that

11

these "facts demonstrate that fraud was perpetuated in the trial proceedings" and that Defendant Cupp's report was false because the son was not present. *Id.*

Defendants' evidence shows that Defendant Cupp's original Uniform Citation of this incident did not mention Ms. Hogancamp's son. DN 71-3, PageID #: 511. It states that Ms. Hogancamp saw a man on her porch, who, after she confronted him, drove away in a Buick Rendezvous; Ms. Hogancamp had seen this car circle slowly by her house at least seven times; and that, when she reviewed her security camera footage, she saw Plaintiff on her porch watching her that evening while masturbating. *Id.*; *see also* DN 84-2, 4:10-7:58 (Hogancamp interview in which she showed her security camera footage to Defendant Cupp who immediately recognized Plaintiff.).

In a follow up Uniform Citation, Defendant Cupp explains that on further investigation, he learned that Ms. Hogancamp's son was present at the time. DN 71-3, PageID #: 512. That discovery occurred during the interview with Ms. Hogancamp. DN 84-2, 8:25-:45. Defendant Cupp's KYIBRS narrative also explains that he reviewed Ms. Hogancamp's security camera footage, and immediately recognized Plaintiff, his vehicle, and his behavior. DN 71-3, PageID #: 516. In his affidavit, Defendant Cupp swears under oath that the information in his citations and KYIBRS narratives were true. *Id.* at PageID #: 505.

The Court has reviewed the body camera footage of June 30, 2021, in which Plaintiff admits he was at the Yeiser Street house, including on the porch, although he claims he was looking for "Sarah." DN 71-9, 7:03-:18. He also stated that he did not exhibit expose himself and masturbate in public "all the time" and that he was "not the only one in 100,000 plus [people]" who exhibited that behavior. *Id.* at 3:59. Further, Defendant Cupp clearly stated that he was able to see Plaintiff's genitalia on the video. *Id.* at 8:02-:07. Thus, Defendants' version is supported

12

by Defendant Cupp's affidavit and the video footage, contradicting Plaintiff's unsupported assertion that because it was dark, it was impossible to see whether his genitals were exposed.

### 4. June 30, 2021, ViWin Tech Incident

According to Plaintiff, Defendant Cupp's "pattern of . . . tying [him] to multiple incidents" is evident in that when Defendant Cupp responded to this incident, he "just happened to have a photo of [Plaintiff]." DN 83, PageID #: 759. He asserts that he does not appear on ViWin security footage. *Id*. He points out that he was found several blocks away with, according to him, no "body indicators that he had been running" but offers no evidence in support of whether he physically appeared to have been running or not. *Id*. The Court's review of the video shows that when Defendant Cupp approached Plaintiff on the street, he was carrying a small towel in his hand. DN 71-10. It also shows that before Defendant Cupp issued the citations, he had another officer go to ViWin to show the victim a photo of Plaintiff and received confirmation from the victim. *Id*. at 6:15-:35.

### 5. March 11, 2022 Walgreen's Incident

Finally, Plaintiff asserts that the security footage of this incident showing that he was in the store at the relevant time "did not support [Ms. Perez's] claims that [he] had exposed himself." DN 83, PageID #: 760.

First, Defendants did not claim that there was footage of the exposure to Ms. Perez. Second, Plaintiff fails to address Defendants' evidence showing that once the police responded, Ms. Perez positively identified Plaintiff and reported that he had exposed himself. DN 71-12, PageID #: 536 (Perez Affidavit). Plaintiff also does not dispute that in the body camera video of when he was told that Ms. Perez "said that you pulled out your genitals and showed them to her,"

Plaintiff responded, "I'm not the only one in Paducah that do behaviors like that."  DN 71-10, 5:17.

### IV. SUMMARY JUDGMENT STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### A. Court's Resolution of Material Factual Disputes

The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  To do so, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file— show specific facts that reveal a genuine issue for trial."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and that a

party's "status as a pro se litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted).[7]

The Court has carefully reviewed the evidence submitted. It supports the Defendants' statement of the facts. As set forth above, all of Plaintiff's challenges to Defendants' version of the facts are unsupported, whereas Defendants have cited to record evidence to support their version of all material facts. The Court thus holds that there is no genuine issue of material fact with the facts set forth by Defendants. *See Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (where a party's version of the facts is blatantly contradicted by the record so that no reasonable jury could believe it, the Court should not adopt that version when ruling on a motion for summary judgment).

## B. Legal Analysis

The Court turns to consideration of whether Plaintiff is or Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

### 1. Section 1983 malicious prosecution claims

Plaintiff sued all three Defendants for malicious prosecution under § 1983 related to the incidents set forth above.

---

[7] Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). Plaintiff's complaint and amended complaint were verified; however, the Court's review found no statements based on Plaintiff's personal knowledge regarding the material facts in this case.

The Sixth Circuit has identified the four elements required to succeed on a Fourth Amendment malicious prosecution claim:

> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute.  Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution.  Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.  Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (cleaned up).

Defendants argue that Plaintiff's malicious prosecution claims fail as a matter of law because they did not make, influence, or participate in the decision to initiate the prosecutions against Plaintiff; probable cause existed for each of citation and arrest; Plaintiff did not suffer a deprivation of liberty beyond the initial seizure; and the criminal proceedings were not terminated in Plaintiff's favor.  DN 71, PageID #: 488-94.  In contrast, Plaintiff argues that all four of the elements exist.  DN 83, PageID: #: 765.  The Court first considers the issue of probable cause because "a malicious prosecution claim cannot lie where probable cause is found."  *Artuso v. Felt*, No. 23-3035, 2024 WL 495763, at *7 (6th Cir. Feb. 8, 2024).

Defendants argue:

> Each arrest complained of by [Plaintiff] was initiated by Defendant Officers only after the [PPD] received verified, credible reports by the victims/witnesses describing [Plaintiff]'s criminal conduct.  Further, in all cases, the victim either produced video of the perpetrator where the officers could identify the suspect as [Plaintiff] or the victims themselves identified [Plaintiff] as the perpetrator.  Finally, [Plaintiff] made incriminating statements when interviewed about most of the incidents.

DN 71, PageID #: 490-91.

16

Regarding the probable cause element, Plaintiff argues that the facts in each incident were "fabricated and could not be sustained by any supporting evidence."[8] DN 83, PageID #: 762.

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Browning v. Smith*, No. 1:24-CV-00134-GNS, 2025 WL 3078884, at *6 (W.D. Ky. Nov. 4, 2025) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). A probable cause determination depends on whether, at the moment of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "Probable cause . . . is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). If the court independently finds that probable cause supported prosecution, Plaintiff cannot make out a malicious prosecution claim regardless of any alleged false statements made by an officer. *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001). "'[T]he ultimate question of probable cause . . . in a civil case when the historical facts are undisputed is a question of law for the court and not a jury.'" *Lester v. Roberts*, 986 F.3d 599, 612 (6th Cir. 2021) (citing *Gerics v. Trevino*, 974 F.3d 798, 805 (6th Cir. 2020)).

All Defendants have averred that the information in the citations they authored was true. They also provide the affidavit of Assistant County Attorney Newberg who was involved in the prosecution of Plaintiff's cases. DN 71-5, PageID #: 522. He avers that it was his "strong belief that the charging/arresting officers had ample evidence to support a probable cause determination when [Plaintiff] was charged and/or arrested." *Id*.

---

[8] He cites to *Hurt's Adm'r v. Louisville & N.R. Co.*, 183 S.W.2d 628, 629 (1944), which is a wrongful death case and in no way related to probable cause determinations. *Id*.

The evidence shows that at the time Defendant Cupp issued the citations for Indecent Exposure, Second Degree and Disorderly Conduct, Second Degree for the Walmart Incident, he knew that Ms. Patterson had reported a male exposing himself who she identified as Plaintiff from a photo and that her husband had also positively identified Plaintiff from his familiarity with him as his parole officer.  Further, as shown on the body camera video, Plaintiff admitted to being at Walmart at the pertinent time and putting his hands down the front of his pants.  Moreover, Walmart's security personnel relayed to him they had had prior complaints about Plaintiff for the same behavior.

In Kentucky, "[a] person is guilty of indecent exposure in the second degree when he intentionally exposes his genitals under circumstances in which he knows or should know that his conduct is likely to cause affront or alarm to a person eighteen (18) years of age or older."  Ky. Rev. Stat. § 510.150(1).  Here, clearly, Defendant Cupp had probable cause to cite Plaintiff for Indecent Exposure, Second Degree.

Because there had been prior complaints of the same behavior and because Plaintiff had caused public alarm in the busy store, Defendant Cupp also had probable cause to cite Plaintiff for Disorderly Conduct, Second Degree, which occurs when, among other things, "A person . . . when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he: . . . (d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose."  Ky. Rev. Stat. § 525.060(1)(d).

The evidence also demonstrates that Defendant Euteneier had probable cause to issue the citation to Plaintiff for Disorderly Conduct, Second Degree, and Indecent Exposure, Second Degree regarding the incidents with Ms. Brown from the information he gleaned from interviewing her, *i.e.*, that Plaintiff approached her on her front porch and made sexually explicit offers to her

and that on another date he approached her on the street and exposed his genitals to her.  Defendant Euteneier's investigation confirmed Ms. Brown's statement that the culprit drove a white Buick Rendezvous; had just been released from prison; and, per Defendant Cupp, had received 150 write-ups for indecent exposure while he was in prison.  *See Frazier v. City of Detroit*, No. 21-11193, 2022 WL 1978736, at *5 (E.D. Mich. June 6, 2022) ("[A]n officer's knowledge and reliance on another officer's statements can constitute probable cause that a crime was committed.") (citing *Willis v. Neal*, 247 F. App'x 738, 742-43 (6th Cir. 2007)).

Prior to citing Plaintiff for Indecent Exposure related to the Yeiser Avenue Incidents, Defendant Cupp knew that Ms. Hogancamp had identified Plaintiff from a photo and identified the car he drove.  He viewed footage of Plaintiff on her porch and recognized Plaintiff as the man with his genitals exposed.  The Court holds that Defendant Cupp had probable cause to believe Plaintiff had indecently exposed himself to Ms. Hogancamp.

Defendant Cupp also cited Plaintiff for voyeurism.  In Kentucky,

(1) A person is guilty of voyeurism when:

> (a) He or she intentionally:
>
> . . .
>
> 3. Enters or remains unlawfully in or upon the premises of another for the purpose of observing or viewing the sexual conduct, genitals, an undergarment worn without being publicly visible, or nipple of the female breast of another person without the person's consent; and
>
> (b) The other person is in a place where a reasonable person would believe that his or her sexual conduct, genitals, undergarments, or nipple of the female breast will not be observed, viewed, photographed, filmed, or videotaped without his or her knowledge.

Ky. Rev. Stat. § 531.090.

Defendant Cupp knew from Ms. Hogancamp and the video footage that Plaintiff had been on the porch for a period of time looking into her window. Ms. Hogancamp was in the privacy of her own home, going in and out of her bathroom. Thus, the Court holds that Plaintiff also had probable cause to cite Plaintiff for voyeurism. *See, e.g.*, *Dist. of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (holding that probable cause "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity'") (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)).

Defendant Cupp knew before arresting Plaintiff after the VinWin Incident that Ms. Perez reported that a man had approached her, exposed his genitals, and masturbated, and that this behavior was similar to other incidents involving Plaintiff, whom he had cited twice before. Before arresting him, Defendant Cupp interviewed Plaintiff whom he had located six blocks away. When asked about it, Plaintiff did not deny that behavior, instead admitting that he is not the only person who exhibits that behavior. DN 71-10, 3:59. The Court holds that Defendant Cupp had probable cause to cite and arrest Plaintiff. *See Wesby*, 583 U.S. at 57.

After the Walgreen's Incident, Defendant Willett also had probable cause to arrest Plaintiff for Indecent Exposure, Second Degree and Disorderly Conduct, Second Degree. *See Tomasik v. Martin*, No. 22-1081, 2023 WL 2137354, at *4 (6th Cir. Feb. 21, 2023) ("[P]robable cause is based on the totality of the circumstances as viewed by an objectively reasonable officer.") (citing *Wesby*, 583 U.S. at 56). As set forth in the citation, which is consistent with the security footage, Defendant Willett knew that Plaintiff was in the store for over an hour following Ms. Perez and then exposing his genitals to her, had followed her on five different occasions while she was at work, and had asked for her when she was not working. *Id*. Plaintiff admitted to Defendant Willett that he had been in the Walgreen's that evening before Defendant Willet arrested him.

Furthermore, Defendant Willett was aware that Plaintiff had been charged multiple times over the past year for similar behavior.

The Court holds that because each Defendant had probable cause to cite or arrest Plaintiff on these five occasions, Defendants are entitled to summary judgment on Plaintiff's § 1983 malicious prosecution claims. *See Artuso*, 2024 WL 495763, at *7.

### 2. State-law malicious prosecution

Under Kentucky law, a malicious prosecution may be established by showing that:

1) the defendant initiated, continued, or procured a criminal . . . proceeding against the plaintiff;

2) the defendant *acted without probable cause*;

3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . .;

4) the proceeding . . . terminated in favor of the person against whom it was brought; and

5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016), *as corrected* (Sept. 22, 2016) (emphasis added). Thus, a Kentucky claim for "malicious prosecution, . . . cannot survive when the police had probable cause." *Lester*, 986 F.3d at 612-13 (citing *Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223, 227 (2009)). Kentucky caselaw treats the question of whether probable cause existed as a legal issue for the court. *Id.* (citing *Craycroft v. Pippin*, 245 S.W.3d 804, 806 (Ky. Ct. App. 2008)). Kentucky's probable cause standard is materially identical to the federal standard. *See Williams v. Commonwealth*, 147 S.W.3d 1, 7 (Ky. 2004).

Defendants, therefore, are entitled to summary judgment on Plaintiff's state-law malicious prosecution claims because, as the Court has already determined, they had probable cause to issue

the citations and make the arrests at issue here. *See, e.g.*, *Fox*, 489 F.3d at 237-38 ("[W]e agree with the district court that Fox cannot demonstrate an absence or lack of probable cause for the criminal proceedings. Accordingly, we affirm the grant of summary judgment to DeSoto on plaintiff's claim for malicious prosecution whether asserted under state or federal law.").[9]

### 3. Section 1983 excessive force

On initial review, the Court allowed Plaintiff's claim of excessive force under § 1983 to proceed against Defendant Willett stemming from the Walgreen's Incident. DN 8, PageID #: 36, 40. Plaintiff argues in his response that Defendant Willett having charged him with a misdemeanor and having gone to his residence without his parole officer "leads to the suspicion for the need for an arrest" and that fact issues remain whether the arrest was necessary in the first place thereby "establishing a finding that any such seizure was excessive." DN 82, PageID #: 738 (cleaned up). Plaintiff's assertions do not relate to what an excessive force claim is.

"The Fourth Amendment guarantees the right to be free from excessive force to persons who are stopped, arrested, or held in custody by an arresting officer." *Hughey v. Easlick*, 3 F.4th 283, 289 (6th Cir. 2021) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002)). The Sixth Circuit applies the Fourth Amendment unreasonable jurisprudence in excessive force claims using an objective reasonableness standard. *Getz v. Swoap*, 833 F.3d 646, 652 (6th Cir. 2016) (internal citations omitted). The Sixth Circuit explained:

> In assessing objective reasonableness, "courts must balance the consequences to the individual against the government's interests in effecting the seizure." While the analysis is fact specific, three factors are of particular relevance: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

---

[9] Plaintiff also argues that he is entitled to summary judgment under the "Unclean Hands Doctrine" because Defendants "fabricated the charges against [him] in collusion with the alleged victims." DN 83, PageID #: 765. That doctrine is not applicable here. "The unclean hands doctrine is a rule of equity that forecloses relief to a party who has engaged in fraudulent, illegal, or unconscionable conduct but does not operate so as to 'repel all sinners from courts of equity.'" *Suter v. Mazyck*, 226 S.W.3d 837, 843 (Ky. Ct. App. 2007), *as modified* (July 13, 2007) (quoting *Dunscombe v. Amfot Oil Co.*, 256 S.W. 427, 429 (1923)).

the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." We judge the lawfulness of the conduct from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Id*. at 652-53 (internal citations omitted).

Defendant Willett avers that in arresting Plaintiff he "used the minimum amount of force necessary to place him under arrest." DN 71-15, PageID #: 539. A review of the footage from the body cameras of the officers present at Plaintiff's arrest, Defendant Willett and Officer Simmonds, shows that no excessive force occurred. After entering the front room of the house, Plaintiff's girlfriend went to get Plaintiff who was showering. Defendant Willett explained that Plaintiff was under arrest but allowed him to get dressed in front of him, with his girlfriend bringing him clothes from the back of the house. DN 71-16, 6:28-7:16. When Plaintiff stated that he was going to go to the back to "grab my coat" and insisted that he had the right to go anywhere in his house, Defendant Willett again stated that he was under arrest and then simply moved Plaintiff's arms around to his back and placed the handcuffs on him – end of story. *Id*. at 7:16-8:03.

"The use of handcuffs is [a] use of force, and such force must be objectively reasonable under the circumstances." *Murphy v. May*, 714 F. Supp. 3d 851, 867 (E.D. Mich. 2024) (quoting *Muehler v. Mena*, 544 U.S. 93, 103 (2005) (Kennedy, J., concurring). The Sixth Circuit has "articulated a three-part test for ascertaining whether 'unduly tight or excessively forceful handcuffing' constitutes excessive force." *Hughey v. Easlick*, 3 F.4th 283, 289 (6th Cir. 2021) (quoting *Morrison v. Bd. of Trs. Of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009)). "At the summary-judgment stage, a plaintiff must create a genuine dispute of material fact that (1) [they] complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Id.* (internal quotation

marks and citation omitted).   Here, the video definitively shows that none of these occurred. Defendant Willett, therefore, is entitled to summary judgment on this claim.

### 4. State-law assault and battery claim

Plaintiff alleged that Defendant Willett committed assault and battery when he "manhandled" him during the arrest.   DN 5, PageID #: 23; *see also* DN 8, PageID #: 36.   His response/cross-motion does not mention assault or battery.   DN 82, PageID #: 738.

 In Kentucky, "[t]he use of excessive force by a police officer constitutes the intentional tort of battery." *Mills v. Owsley Cnty. Ky.*, 483 F. Supp. 3d 435, 476 (E.D. Ky. 2020) (citing *Ali v. City of Louisville*, No. 3:05CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006)). "A law enforcement officer who uses a reasonable amount of force in making an arrest has not committed a battery." *Easter v. Hendrix*, No. 3:17-CV-00031-GFVT, 2018 WL 5268612, at *8 (E.D. Ky. Oct. 23, 2018) (citing *City of Lexington v. Gray*, 499 S.W.2d 72 (Ky. 1973)).

Here, Defendant Willett merely moved Plaintiff's hands behind his back and cuffed him. As the Court has found that this small use of force was reasonable, Defendant Willett is entitled to summary judgment on this claim.

### 5. Federal false arrest and false imprisonment

On initial review, the Court allowed Plaintiff's federal and state-law claims of false arrest and false imprisonment to proceed against Defendant Willett stemming from the Walgreen's Incident.   DN 8, PageID #: 36, 40.   Plaintiff alleged that on March 11, 2022, Defendant Willett prepared a false incident report of indecent exposure which resulted in his being held with an unreasonable bond.

In false arrest and imprisonment claims brought under § 1983, Plaintiff "must prove that the arresting officer lacked probable cause to arrest the plaintiff." *Day v. DeLong*, 358 F. Supp.

3d 687, 709 (S.D. Ohio 2019) (citing *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)); *Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir. 1997) (finding the existence of probable cause for arrest forecloses false arrest claims).  Because the Court has found that probable cause existed, Defendant Willett is entitled to summary judgment on these claims.

### 6. *State-law false arrest/false imprisonment claim*

"When, as here, a law enforcement officer is the alleged tortfeasor, Kentucky collapses claims of false arrest and false imprisonment." *Estep v. Combs*, 366 F. Supp. 3d 863, 883 (E.D. Ky. 2018) (citing *Dunn v. Felty*, No. 2004-CA-001029-MR, 2005 WL 736596, at *2 (Ky. App. Apr. 1, 2005)).  "A law enforcement officer may detain an individual under Kentucky law pursuant to a warrant or if he has 'probable cause, that is, reasonable objective grounds to believe that a crime was committed and that the plaintiff committed it.'" *DeHart v. Perkins*, No. 1:22-CV-00013-GNS, 2022 WL 4279729, at *4 (W.D. Ky. Sept. 15, 2022) (citation and internal quotation marks omitted).  Kentucky's probable cause standard is materially identical to the federal standard. *See Williams*, 147 S.W.3d at 7.  Thus, the Court's conclusion above as to the existence of probable cause also decides these claims. *See, e.g.*, *Estep v. Combs*, 467 F. Supp. 3d 476, 497-98 (E.D. Ky. 2020) (deciding state false imprisonment claim based on probable cause determination of § 1983 claim).  Defendant Willett is entitled to summary judgment on these claims.

### 7. *Libel*

Plaintiff's amended complaint alleged that during the Gailee Brown Incidents Defendant Euteneier made "a libelous statement in his Uniform Officer Report . . . *received as discovery in November 2022*, which . . . referred to Plaintiff on the Sex Offender Registry, which is a blatant malicious falsehood which Defendant Euteneier should have known and that this would cause and did cause IIED."  DN 5, PageID #: 22 (cleaned up, emphasis added).

Defendants argue that Plaintiff's libel claim is time-barred because the "publication" occurred when Defendant Euteneier characterized him as being on the sex offender registry on April 6, 2021.  DN 71, PageID #: 495.

Defendants are correct that "[a] cause of action for defamation accrues at the time of publication, not when the plaintiff learns or should learn of its existence."  *Thomas v. Bernhardt*, No. 1:19CV-157-GNS, 2020 WL 5504236, at *3 (W.D. Ky. Sept. 11, 2020) (citing *Lashlee v. Sumner*, 570 F.2d 107, 109 (6th Cir. 1978)); *see also Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. Ct. App. 1980) ("[I]t is the publication of the alleged libelous matter that causes the defamation or injury thus commencing the running of the one year statute of limitations provided by KRS 413.140(1)(d).")).  Consequently, it is not the November 2022 discovery date put forth by Plaintiff, but the April 6, 2021, publication date, that is the operative date.  DN 71-7, PageID #: 525 (Euteneier Affidavit stating that he "*served this citation on Maxie on April 6, 2021*") (emphasis added).

A libel claim in Kentucky must be brought within one year of the publication of the offending statement.  Ky. Rev. Stat. § 413.140(1)(d).  Under the prison mailbox rule, Plaintiff's complaint was filed on February 8, 2023.  *See Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002); DN 1, PageID #: 6.  Therefore, Plaintiff's libel claim is time-barred, entitling Defendant Euteneier to summary judgment.[10]

### 8. Intentional infliction of emotional distress

Plaintiff's IIED claim against Defendant Cupp stems from the Walmart, the Yeiser Avenue, and the ViWin Tech Incidents.  Defendants contend that because Plaintiff alleged the traditional torts of "assault and battery, false arrest/imprisonment, etc. for which recovery for

---

[10] As Defendants' reply points out, DN 84, PageID #: 789, Plaintiff's response/cross-motion does not address the libel claim.

26

emotional distress is allowed, the tort of IIED is not available to him."  DN 71, PageID #: 495. They also assert that because they did not fabricate the charges, his IIED claim fails.  DN 84, PageID #: 788.

To state a claim for IIED in Kentucky: "the wrongdoer's conduct must be intentional or reckless"; "[t]he conduct must be outrageous and intolerable . . ."; there must exist "a causal connection between the wrongdoer's conduct and the emotional distress"; and the plaintiff's distress must be severe.  *Osborne v. Payne*, 31 S.W.3d 911, 913 (Ky. 2000) (citation modified, internal quotation marks and citation omitted).  It is a "gap filler;" it "is not available if 'an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed.'"  *Estep*, 366 F. Supp. at 887 (quoting *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. Ct. App. 1993)); *see also Grace v. Armstrong Coal Co., Inc.*, No. 4:08-cv-109-JHM, 2009 WL 366239, at *3 (W.D. Ky. Feb. 13, 1999) ("[A]n IIED claim cannot be pled by itself, in tandem with another tort, or in the alternative as long as some other tort with adequate relief fits the facts.").  An exception to this "gap filler" rule exists if the defendant solely intended to cause extreme emotional distress.  *Green v. Floyd Cnty., Ky.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011) (citing *Brewer v. Hillard*, 15 S.W.3d 1, 7-8 (Ky. App. 1999)).  "But where the plaintiff merely alleges that emotional distress resulted from the defendants' conduct, not that their sole purpose in engaging in that conduct was to inflict that distress, the allegations fall outside this narrow exception and fail to state a viable IIED claim."  *McIlwain v. Berry*, No. 3:23-CV-130-CHB, 2025 WL 2200747, at *15 (W.D. Ky. Aug. 1, 2025) (quoting *Bailey v. Aramark Corp.*, No. CV:16-343-JMH, 2017 WL 3841687, at *4 (E.D. Ky. Sept. 1, 2017)) (citing cases).

Here, Plaintiff sued under other, traditional torts "which fit[] the facts," *Grace*, 2009 WL 366239, at *3, and makes no argument that Defendants' sole purpose was to inflict distress. Nor would the record support such a conclusion. Further, as already discussed, the record demonstrates that the charges against Plaintiff were not "fabricated." The Court will grant Defendant Cupp summary judgment on this claim as well.

## V. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motion for summary judgment (DN 71) is **GRANTED** and Plaintiff's cross-motion for summary judgment (DN 83) is **DENIED**.

Date: February 2, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of record
4414.009